NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 4 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUSTIN EDMISTON, AKA Justin James Edmiston, AKA Justin James Edmisten, AKA Justin Edmisten, <br><br>       Plaintiff - Appellee, <br><br>  v. <br><br> PICKENS; KLEER; DAVIS; RIGNEY, Lt., CERT; REUBART, <br><br>       Defendants - Appellants. | No. 24-6435 <br><br> D.C. No. 3:22-cv-00439-ART-CLB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted April 16, 2026
Pasadena, California

Before: PAEZ, CALLAHAN, and BUMATAY, Circuit Judges.
Dissent by Judge PAEZ.

Justin Edmisten, a prisoner at Ely State Prison in Nevada, alleges that Nevada

Department of Correction Officers violated his Eighth Amendment rights while

extracting him from his cell. Officers Seth Davis, Macelen Kleer, Madeline Pickens,

_____

     \*     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Curtis Rigney, Chet Rigney, and William Reubart appeal the district court's denial of summary judgment based on qualified immunity. We have jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985). We review the district court's denial of qualified immunity de novo. *Peck v. Montoya*, 51 F.4th 877, 884 (9th Cir. 2022). We reverse.

While we must generally "accept the district court's determination that there are genuine disputes of fact," *Peck*, 51 F.4th at 887, to defeat summary judgment, the non-movant "must present affirmative evidence," and a "mere scintilla of evidence" is insufficient. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). "We are not required to accept a non-movant's version of events when it is clearly contradicted by a video in the record." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 746 (9th Cir. 2021) (simplified). And we may consider facts offered by defendants that are "uncontradicted by any evidence in the record." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023) (simplified).

Officers are entitled to receive qualified immunity if (1) they did not violate a "federal statutory or constitutional right" and (2) their use of force wasn't prohibited by clearly established law. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (simplified). The Defendant Officers are entitled to qualified immunity on both prongs.

24-6435

1.  The Defendant Officers did not violate Edmisten's constitutional rights. When confronting "a prison disturbance," prison officials may use force to restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). They are "accorded wide-ranging deference" in doing so, including "prophylactic or preventative measures intended to reduce . . . breaches of prison discipline." *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (simplified). These measures may include the use of force, so long as it doesn't include the wanton infliction of pain. *See id.* at 322.

Viewing the facts in the light most favorable to Edmisten, the prison officers' use of force did not violate the Eighth Amendment. Edmisten's decision to throw urine on prison officials and his refusal to leave his cell were disruptive and dangerous actions. After throwing urine, prison officers wanted to search Edmisten to locate the device he used to propel the urine and to ensure officer safety. They asked Edmisten to submit to the search voluntarily. He refused. The officers repeatedly warned Edmisten he would be removed from the cell. After he refused to comply several times, they entered the cell, restrained Edmisten, and removed him. And a video recording shows that officers believed that he resisted, even causing one officer to scream, "[s]top resisting. The inmate is fighting. The inmate is striking the officer." It took the officers less than 2 minutes to put restraints on him and remove him. Edmisten's face appeared bloody after the removal and he was given medical attention immediately after he was searched. Edmisten suffered

minor injuries—small lacerations on his eyebrows, mild swelling and discoloration under his eyes, and minimal bleeding.

Edmisten alleges that the officers beat him after he was handcuffed, violating his Eighth Amendment right. But the uncontradicted video footage establishes that any use of force was brief, incidental to his resistance, and terminated after Edmisten was clearly restrained. Edmisten doesn't contest that he refused to exit his cell and that he was non-compliant when officers tried to remove him. Indeed, he admitted in his complaint that he "pushed off" the officers trying to remove him. And he never alleges that he was struck after the officer announced he was fully restrained. While it was possible a blow landed in the seconds after Edmisten was handcuffed, as he alleges, the six officers were operating in a small cell, trying to subdue a non-compliant prisoner. So not every officer could know the precise moment each restraint was placed on Edmisten's hands and legs. The video makes clear that no blows were made after an officer announced that his "wrists and legs are secured." Instead, the video shows that the officers immediately stood him up and brought him to a shower, where they searched him and then gave him medical attention. As Edmisten conceded, "he had been on the ground for roughly 'five seconds'" after he was handcuffed. So there could not be any strikes long after he was restrained. Edmisten never alleged that he was hit after he was fully restrained—only that he

24-6435

was "flogged" after he was in handcuffs. This ignores that officers sought to place him in leg and wrist restraints.

Thus, the dissent is simply wrong to say that we resolve factual disputes in favor of the Defendants. If anything, it is the dissent that aggrandizes Edmisten's allegations, which we cannot do. Rather, our job is to consider Edmisten's allegations as true along with the uncontradicted record. Even construing this in Edmisten's favor, no reasonable jury could find a constitutional violation.

2. Second, the Defendant Officers' conduct did not violate clearly established law. To be clearly established, the law must be "sufficiently clear that every reasonable officer would have understood that what he is doing violates" Edmisten's constitutional right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (simplified). This is a demanding requirement that "protects all but the plainly incompetent or those who knowingly violate the law" and requires a "high degree of specificity." *Wesby*, 583 U.S. at 63 (simplified). The officers are entitled to qualified immunity if existing precedent does not "squarely govern[] the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (simplified).

No clearly established law requires each officer to have perfect knowledge of the exact second a resisting prisoner is fully subdued following a violent confrontation in close quarters. And our existing precedents do not provide clearly established law here:

24-6435

- In *Hughes*, after the inmate "was handcuffed and subdued," officers allowed a police canine to bite the inmate for "two minutes, if not more." *Hughes v. Rodriguez*, 31 F.4th 1211, 1217 (9th Cir. 2022). Two minutes is a prolonged period after the inmate was clearly subdued. Here, mere seconds elapsed after Edmisten was handcuffed.

- In *Manley*, the officers punched, kicked, and stomped an inmate after extracting him from his cell while he "was restrained in handcuffs and leg irons." *Manley v. Rowley*, 847 F.3d 705, 709 (9th Cir. 2017). This case would be relevant if the officers continued to beat and kick Edmisten after he was fully subdued and extracted from his cell. But Edmisten only alleges he was hit in the few seconds after he was handcuffed (but not leg restrained)—before he was immediately extracted from his cell.

- In *Watts*, the officers beat a handcuffed inmate after he did not cooperate during an interrogation. *Watts v. McKinney*, 394 F.3d 710, 711 (9th Cir. 2005). During the interrogation, the officers brought the inmate to a holding cell, "slammed [the prisoner] into the wall," and kicked his genitals and back several times while he "was lying on the cell floor with cuffs on and with his hands behind his back." *Id.* At the time, the inmate did not "resist or threaten" officers "in any fashion or break any prison rules." *Id.* Nothing like this happened here. Edmisten only alleges he was struck within seconds of being subdued after he assaulted prison staff with his urine and was non-compliant.

- In *Martinez*, officers fired two plastic bullets from a gas gun and tased him for simply using a bed sheet to cover his cell door. *Martinez v. Stanford*, 323 F.3d 1178, 1180 (9th Cir. 2003). The officers tased him two more times "despite his lack of resistance." *Id.* They then continued to kick and beat him with "a baton four or five times" after he was in handcuffs. *Id.* Here, we have a resisting prisoner alleging he was hit a few seconds after he was handcuffed.

- In *Hudson*, an officer placed a prisoner "in handcuffs and shackles, took the prisoner out of his cell, and walked him toward the penitentiary's 'administrative lockdown' area." 503 U.S. at 4. On the way there, the officer then "punched [the prisoner] in the mouth, eyes, chest, and stomach while [another officer] held the inmate in place and kicked and punched him from behind." *Id.* The differences between *Hudson* and our case are glaring.

What all these cases stand for is that officers cannot harm a prisoner who is

*fully* subdued and was immediately removed from his cell after he was fully restrained. And it is uncontested that Edmisten was resisting in the confines of a small room, and that Edmisten doesn't allege he was struck after he was fully restrained.

Because the Defendant Officers didn't violate the Eighth Amendment or clearly established law, they are entitled to qualified immunity.

**REVERSED.**

No. 24-6435, *Edmisten v. Pickens, et al.*

PAEZ, Circuit Judge, dissenting:

On June 29, 2022, five Nevada Department of Corrections ("NDOC") officers at the Ely State Prison, under the supervision of Lieutenant Chet Rigney and Warden William Reubart (collectively, "Defendants"), engaged in a planned cell extraction of Plaintiff Justin Edmisten ("Edmisten"), an inmate. During the extraction, the officers rushed into Edmisten's cell, threw him to the ground, and restrained him. Edmisten alleges that the officers then beat him in violation of his Eighth Amendment rights, resulting in bleeding, two black eyes, and other injuries to his face, ear, and legs. Defendants appeal the district court's denial of summary judgment based on qualified immunity.

Because the majority improperly resolves multiple factual disputes in favor of Defendants based on obstructed video footage that does not "blatantly contradict" Plaintiff's version of events, I respectfully dissent. *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020).

**1.** "[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). Accordingly, we lack jurisdiction to review the district court's determination that the parties' evidence presents

genuine issues of material fact. *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009). Instead, where disputed facts exist, we must assume that the version of the material facts asserted by the plaintiff, as the non-moving party, is correct. *Id.* (quoting *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008)). Our review is thus limited to whether, assuming all factual disputes are resolved in Edmisten's favor, Defendants would be entitled to qualified immunity as a matter of law. *See George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013). And because Edmisten was pro se before the district court, we must not only make all reasonable inferences in his favor, but also liberally construe his summary judgment filings. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

**2.** Assuming all factual disputes are resolved in Edmisten's favor, I would hold that a reasonable jury could find Defendants violated his Eighth Amendment right to be free of excessive force. The Supreme Court's "settled rule [is] that 'the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The question of whether force used against an inmate inflicted unnecessary and wanton pain and suffering "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320–21).

2

We apply a five-factor balancing test to determine whether the use of force against Edmisten violated the Eighth Amendment: "(1) the extent of injury suffered by the inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting *Hudson*, 503 U.S. at 7).

As the district court determined, the video recording of the incident does not resolve critical factual disputes regarding Edmisten's conduct and Defendants' use of force. As the video shows, any view of the physical encounter between Defendants and Edmisten is effectively blocked by the five correctional officers, who are surrounding Edmisten in full tactical riot gear throughout the cell extraction. The video of the extraction is further obstructed by Lieutenant Rigney, who is standing behind the officers, almost directly in front of the camera lens.



3



Unless Edmisten's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," we must assume that the jury could find Edmisten's account of what happened credible, even if it conflicts with Defendants' account. *Orn*, 949 F.3d at 1171 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Because most of Defendants' use of force cannot be seen in the obstructed video recording, it is impossible to conclude that it "blatantly contradicts" Edmisten's allegations. It is equally impossible to conclude that Defendants' account is "uncontradicted by the record," given Edmisten's sworn statement that—aside from pushing back once against a Plexi-glass shield when officers first entered the cell—he was otherwise entirely compliant during the encounter. Bafflingly, the majority nevertheless holds that almost entirely imperceptible conduct in a video "clearly contradict[s]" Edmisten's account. *Hernandez*, 989 F.3d at 746 (simplified).

In contravention of our legal standard, the majority resolves factual disputes identified by the district court in favor of Defendants, including (1) whether

4

Edmisten was actively combative and resisting officers during the encounter; and (2) whether Lt. Rigney's recorded explanation in the video or any other officers' verbal announcements provide a credible account of the cell extraction process. For example, based solely on oral statements made by the officers in the video, the majority concludes that the use of force was purely incidental to Edmisten's resistance and was terminated immediately upon restraint—which the majority determines occurred at the exact moment that officers orally announced that Edmisten's "wrists and legs are secured." These factual conclusions far exceed our jurisdiction at summary judgment. The disputed conduct at issue is obstructed in the video, and we lack jurisdiction to revisit the district court's determination that a reasonable jury could resolve these factual disputes in Edmisten's favor. *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1007 (9th Cir. 2017).

Accordingly, the majority errs in revisiting the district court's assumed facts and rejecting the district court's determination that there are triable issues of material fact as to whether Defendants violated Edmisten's Eighth Amendment rights. *Id.* The district court properly concluded that a reasonable jury could find, on Edmisten's assumed facts, that the officers applied force against Edmisten with the malicious and sadistic intent to cause harm, and without good faith, and therefore used excessive force in violation of the Eighth Amendment.

**3.** It has long been "clearly established law that beating a handcuffed convict violates the Eighth Amendment." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (citing *Hudson*, 503 U.S. at 4); *see, e.g.*, *Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017) (reversing summary judgment in favor of defendant corrections officers where the inmate plaintiff testified that the officers beat him after he was handcuffed); *see also Martinez*, 323 F.3d at 1180; *Watts v. McKinney*, 394 F.3d 710, 711–12 (9th Cir. 2005); *Hudson*, 503 U.S. at 4. Based on these precedents and taking the facts in the light most favorable to Edmisten, no reasonable officer in Defendants' position would have believed that repeatedly striking Edmisten after he was restrained was constitutionally permissible.

To conclude otherwise, the majority again improperly resolves factual disputes in Defendants' favor. Namely, the majority assumes that Edmisten was not "fully subdued" or "restrained" until an officer can be heard in the video recording announcing that Edmisten's "wrists and legs are secured," despite that neither Edmisten nor the officers' physical conduct is actually visible during this portion of the video footage. The majority also assumes that Edmisten was physically resisting the officers throughout the cell extraction such that the officers' use of force was entirely "incidental to [Edmisten's] resistance." But Edmisten alleges only that he pushed back once against an officer's Plexi-glass shield at the very start of the encounter and was otherwise fully compliant with the officers for the remainder of

6

the altercation, including before and after he was restrained. And once again, Edmisten's conduct during the cell extraction is indiscernible from the video.

Relying on Defendants' preferred version of events, the majority concludes that prior caselaw could not have provided fair warning to the officers because the officers beat Edmisten for a comparatively shorter period of time and because Edmisten had previously disobeyed orders. Not so. Not only are these factual allegations disputed, but the length of time that an inmate is beaten *after* they have been restrained is not once mentioned in the legal analysis of cases cited by the majority. Rather, this court plainly articulated in *Hughes* that it is the act of "beating a handcuffed convict" that constitutes a "clearly established" Eighth Amendment violation, 31 F.4th at 1223 (citing *Hudson*, 503 U.S. at 4), with no carveout for beatings that are comparatively brief in duration. And under our precedents, "if a detainee is complying with orders, then *any* amount of unnecessary force is objectively unreasonable, even if the detainee previously disobeyed orders." *Bell v. Williams*, 108 F.4th 809, 822 (9th Cir. 2024). Thus, even assuming that Edmisten was only "fully restrained" once the officer orally announced that Edmisten's wrists and legs were secured, and that the officers beat Edmisten for only five seconds after that, all of which is disputed, neither our caselaw nor common sense suggest that five seconds is too short for a beating to constitute excessive force. Extraordinary

7

harm and violence, including death, can obviously occur within a five-second window.

Genuine issues of material fact, including the force that Defendants applied, whether and how Edmisten resisted, and at what point Edmisten was sufficiently restrained during the incident, unequivocally preclude summary judgment on qualified immunity grounds.

I respectfully dissent.